UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| HELEN BRENNAN, individually, | Case No. 2:20-cv-00662-RFB-DJA |
| Plaintiff, | |
| | **ORDER** |
| v. | |
| LAS VEGAS METROPOLITAN POLICE DEPARTMENT, *et al.*, | |
| Defendants. | |

## I.     INTRODUCTION

Before the Court are Defendant McCall's Motion to Dismiss (ECF No. 55); Defendant Nevada Highway Patrol's ("NHP") Motion to Dismiss (ECF No. 63); and Motions for Partial Summary Judgment by the Las Vegas Metropolitan Police Department ("LVMPD") (ECF Nos. 36, 57).

For the reasons stated herein, Defendant McCall's Motion to Dismiss (ECF No. 55) is GRANTED; Defendant Nevada Highway Patrol's ("NHP") Motion to Dismiss (ECF No. 63) is GRANTED; Defendant LVMPD's Motion for Partial Summary Judgment (ECF No. 36) is GRANTED; and Defendant LVMPD's Motion for Partial Summary Judgment (ECF No. 57) is GRANTED in part and DENIED in part.

## II.     PROCEDURAL HISTORY

Plaintiff filed the Complaint on April 4, 2020. ECF No. 1. Defendant LVMPD filed a Motion to Dismiss on May 13, 2020. ECF No. 5. Plaintiff filed a First Amended Complaint on June 18, 2020. ECF No. 16. Defendant LVMPD filed a Motion to Dismiss the Amended Complaint

1    on July 8, 2020, ECF No. 24, which Plaintiff responded to on July 17, 2020, ECF No. 25, and

2    Defendant replied to on Jul 27, 2020, ECF No. 26.

3    Discovery closed on June 8, 2021, and motions were due by July 8, 2021. ECF No. 32. On

4    March 26, 2021, the Court denied the Motion to Dismiss as moot and granted the Motion to

5    Dismiss Amended Complaint without prejudice. ECF No. 34. Defendant was also granted leave

6    to file a Motion for Partial Summary Judgment on any newly filed Monell clam by May 21, 2021.

7    Id. Plaintiff filed a Second Amended Complaint ("SAC") on May 10, 2021. ECF No. 35.

8    Defendant LVMPD filed the Motion for Partial Summary Judgment on Plaintiff's Monell

9    claim on May 21, 2021. ECF No. 36. Plaintiff responded on June 28, 2021. ECF No. 46. Defendant

10   replied on July 12, 2021. ECF No. 49. Defendant McCall filed the instant Motion to Dismiss on

11   August 27, 2921. ECF No. 55. Plaintiff filed a response on September 10, 2021. ECF No. 59.

12   Defendant replied on September 15, 2021. ECF No. 60. Defendant Nevada Highway Patrol filed

13   the instant Motion to Dismiss on November 15, 2021. ECF No. 63. Plaintiff responded on

14   November 29, 2021. ECF No. 64. Defendant replied on December 3, 2021. ECF No. 65. LVMPD

15   moved for summary judgment on Plaintiff's remaining claims on September 9, 2021. ECF No. 57.

16   Plaintiff responded on September 29, 2021. ECF No. 61. Defendant replied on October 13, 2021.

17   ECF No. 62.

18   Plaintiff's counsel withdrew as attorney of record on December 20, 2021. ECF No. 68.

19   Plaintiff informed the Court that she intended to proceed pro se and is looking for a new lawyer.

20   On March 17, 2022, Magistrate Judge Albregts entered an order denying Plaintiff's motion for

21   extension of time to find a new lawyer, stating as follows: "The Court will consider Plaintiff as

22   proceeding pro se. Plaintiff will be responsible for meeting case deadlines and attending upcoming

23   hearings, including the hearing scheduled to be in front of Judge Boulware on March 25, 2022."

24   ECF No. 73. The hearing set for March 25, 2022 was subsequently vacated. ECF No. 74. This

25   Order follows.

26   / / /

27   / / /

28   / / /

### III.   MOTIONS TO DISMISS BY DEFENDANT MCCALL AND NHP (ECF NOS. 55, 63)

a.   Legal Standard

An initial pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss, "[a]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." Faulkner v. ADT Sec. Services, Inc., 706 F.3d 1017, 1019 (9th Cir. 2013) (citations omitted).

To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must do more than assert "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . . ." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In other words, a claim will not be dismissed if it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning that the court can reasonably infer "that the defendant is liable for the misconduct alleged." Id. at 678 (internal quotation and citation omitted). The Ninth Circuit, in elaborating on the pleading standard described in Twombly and Iqbal, has held that for a complaint to survive dismissal, the plaintiff must allege non-conclusory facts that, together with reasonable inferences from those facts, are "plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).

b.   Factual Allegations

The Court finds the following facts to be alleged by Plaintiff based on the SAC:

On October 21, 2019, Plaintiff was walking down Boulder Highway in Henderson, Nevada, when Trooper L. McCall of the Nevada Highway Patrol stopped her. McCall asked Plaintiff what she was doing, and before she could answer, he grabbed her by the arm and threw her against the hood of his car.

Four unidentified LVMPD officers later arrived on the scene. The officers pushed Plaintiff to the ground, causing Plaintiff's false teeth to fall out of her mouth. One unidentified LVMPD officer picked up Plaintiff's false teeth and refused to return them to Plaintiff. While on the ground,

3

an LVMPD officer jammed a knee into Plaintiff's back. Plaintiff was handcuffed. Plaintiff asked McCall and the LVMPD officers to remove the handcuffs because she recently had a wrist operation and there were surgical bandages on her right wrist. They refused. While in the patrol car, McCall abruptly hit the brakes, causing Plaintiff to fly forward in the back seat and hit her head on the glass divider.

Plaintiff was transported to the Clark County Detention Center ("CCDC"). When she arrived, several unidentified LVMPD officers placed a hood on Plaintiff's head and dragged her out of the car. She was then strapped into a restraint chair. Plaintiff told the officers that she had a torn MCL. In response, they intentionally strapped her two knees together, causing Plaintiff to scream in pain. Plaintiff was forced to sit in the restraint chair with her knees strapped together for four hours. Her right arm was in pain from the pressure on her surgical stitches, but the officers refused to release her arm. The officers told Plaintiff, "When you come down off your meth high, we will release you." Plaintiff does not use meth. Plaintiff attempted to straighten out her sore leg. An LVMPD officer shoved her leg down and held it there. Plaintiff was later placed in a holding cell. She began to vomit due to migraines but was refused any assistance or dry clothing.

Plaintiff was released hours later and provided with a court date. When she appeared in court on that date, she was told by a judge that no charges were filed against her. To date, no charges have been initiated against Plaintiff, who had committed no crime at the time of her arrest.

Based on the above alleged events, Plaintiff brings the following claims: (1) a 42 U.S.C. § 1983 claim for violations of her Fourth, Fifth, and Fourteenth Amendment rights against LVMPD; (2) a claim under Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978) ("Monell" claim), against Defendants McCall, NHP, and LVMPD; (3) a claim for false imprisonment against Defendants McCall, NHP, and LVMPD; and (4) a claim for battery against LVMPD.

c.   Discussion

The Court addresses the Motion to Dismiss by Defendant McCall and the Motion to Dismiss by NHP in turn.

/ / /

4

i. *Motion to Dismiss by McCall (ECF No. 55)*

McCall moves to dismiss the Monell and false imprisonment claims. He argues a Monell claim cannot be brought against him because Monell liability attaches only to municipalities, and not individuals. He also argues that Plaintiff fails to state a false imprisonment claim against him, and that the claim should be dismissed. McCall argues Plaintiff alleges no facts regarding the circumstances of her arrest from which false imprisonment can be established—only that she was handcuffed, arrested, and taken to CCDC. Defendant argues that because Plaintiff has not alleged facts which, if true, would demonstrate that the challenged arrest lacked any legal cause or justification, she has failed to state a claim of false imprisonment against him. Plaintiff concedes that Monell liability does not exist as to McCall but argues her false imprisonment claim against McCall should not be dismissed, because she has pled sufficient facts to establish that he arrested her without probable cause.

Section 1983 creates a cause of action against a person who, acting under color of state law, deprives a person of their constitutional rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). "To prove a case under section 1983, the plaintiff must demonstrate that (1) the action occurred under color of state law and (2) the action resulted in the deprivation of a constitutional right or federal statutory right." Id. (quotations and citations omitted). There is no *respondeat superior* liability under section 1983. Id. Instead, for a municipal entity to be liable for damages on a section 1983 claim, there must be a showing that the municipality's "policy or custom . . . inflict[ed] the injury," and that "the policy is the moving force behind the constitutional violation." Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 694 (1978); Dougherty v. City of Covina, 654 F.3d 892, 900 (9th Cir. 2011).

Because Monell liability applies to municipal entities, and not individual officers like McCall, the Court dismisses Plaintiff's Monell claim against McCall. See Will v. Michigan Department of State Police, 491 U.S. 58, 70 (1989) (stating that Monell claims are limited "to local government units").

"To establish false imprisonment of which false arrest is an integral part, it is . . . necessary to prove that [the plaintiff] was restrained of [her] liberty under the probable imminence of force

5

without any legal cause or justification." <u>Garton v. City of Reno</u>, 720 P.2d 1227, 1228 (Nev. 1986) (quotations omitted). Under NRS § 171.124, an officer may, "without a warrant, arrest any person whom the officer has reasonable cause for believing to have committed a felony or gross misdemeanor, and is justified in making the arrest, though it afterward appears that a felony or gross misdemeanor has not been committed." <u>See also</u> <u>Marschall v. City of Carson</u>, 464 P.2d 494, 500 (Nev. 1970). The "reasonable cause" requirement of NRS § 171.124 mirrors the probable cause requirement in the Fourth Amendment. <u>See</u> <u>Washington v. State</u>, 576 P.2d 1126, 1128 (Nev. 1978).

The Court also dismisses Plaintiff's claim for false imprisonment against McCall. As this Court has previously recognized, the State of Nevada has generally waived sovereign immunity for state tort actions brought in state court, but not for state law claims brought in federal court. <u>See</u> <u>Holtzclaw v. Laxalt</u>, No. 2:19-cv-00041-RFB-NJK, 2020 U.S. Dist. LEXIS 250058, at *13-14 (D. Nev. Feb. 17, 2020); <u>Moten v. Dzurenda</u>, No. 2:19-cv-01826-RFB-BNW, 2020 U.S. Dist. LEXIS 127798, at *10-12 (D. Nev. July 20, 2020); <u>see also</u> <u>O'Connor v. State of Nev.</u>, 686 F.2d 749, 750 (9th Cir. 1982) ("Nevada has explicitly refused to waive its immunity to suit under the Eleventh Amendment . . . ."). Further, where the state itself is an indispensable party in a state tort claim against a state employee, the Court lacks jurisdiction over the claim against the employee if it lacks jurisdiction over the state. <u>See</u> <u>Hirst v. Gertzen</u>, 676 F.2d 1252, 1264 (9th Cir. 1982) (stating that, where Montana law deemed governmental entities indispensable parties in a state tort claim against a state employee, the federal court had no supplemental jurisdiction over the state court claim if it had no jurisdiction over the indispensable party). NRS § 41.0337 provides that no Nevada state tort action may be brought against a person who is named as a defendant solely because of an act or omission relating to the public duties or employment of the officer or employee of the state, unless the state is "named a party defendant under NRS § 41.031." McCall is an employee of the Nevada Highway Patrol, which is a state agency created by the Nevada legislature as a division of the Nevada Department of Public Safety. <u>See</u> NRS 480.300. Plaintiff alleges that McCall falsely imprisoned her while carrying out his duties as a public officer. As such, the State of Nevada is an indispensable party to Plaintiff's false imprisonment claim against McCall.

6

Because the state has not waived its Eleventh Amendment sovereign immunity and cannot be sued in federal court for a state law tort claim, any state law tort claim—including for false imprisonment—that Plaintiff seeks to bring against McCall must be brought in state court.

The Court accordingly grants McCall's motion to dismiss in its entirety.

ii.   *Motion to Dismiss by NHP (ECF No. 63)*

The Nevada Highway Patrol moves to dismiss the Complaint against it for insufficient process, for failure to state a Monell claim, and for failure to state a false imprisonment claim. NHP first argues the SAC should be dismissed as to NHP because Plaintiff failed to timely serve NHP. Plaintiff filed the SAC on May 10, 2021, and had until August 8, 2021 to serve NHP, but has failed to do so. NHP also argues Plaintiff cannot plead a Monell claim against NHP because NHP is not a municipality, but a state agency, against which there is no Monell liability. Finally, NHP argues Plaintiff fails to allege sufficient facts to plead a cognizable false imprisonment claim.

With respect to service, Plaintiff acknowledges that she failed to timely serve NHP. She states that the failure to serve was an inadvertent oversight and asks the Court to permit service be made upon NHP within a specified time. With respect to the Monell claim, Plaintiff does not argue Monell liability can lie against state agencies or entities, but merely that her Complaint alleges that NHP is a "political subdivision" of the state—in other words, a municipal entity, subject to Monell liability. Finally, Plaintiff argues she has pled sufficient facts showing that McCall subjected her to false imprisonment, that he did so within the scope of his employment with NHP, and that he falsely imprisoned her based on NHP's failure to adequately train him.

The Court first addresses the Monell claim against NHP. In Will v. Michigan Department of State Police, the United States Supreme Court held that neither a state nor a state official sued in his official capacity is a "person" for purposes of a section 1983 damages action. 491 U.S. 58, 70 (1989). The Court clarified that Monell claims are limited "to local government units which are not considered part of the State for Eleventh Amendment purposes." Id. Thus, even if a state is found to have waived its Eleventh Amendment immunity in federal court, Will precludes a damages action against the state governmental entity.[1] Here, the NHP is a state agency or entity,

---

[1] This does not apply when a state official is sued in his official capacity for injunctive relief. See

1  created by the Nevada legislature as a division of the Nevada Department of Public Safety. See

2  NRS 480.300. As such, it is not subject to a Monell action for damages. The Court accordingly

3  dismisses Plaintiff' Monell claim against the NHP.

4      Next, the Court addresses whether a false imprisonment claim can lie against NHP. As

5  stated in the preceding analysis regarding McCall, the Court has no jurisdiction over a false

6  imprisonment claim brought against NHP, a state agency, as the State of Nevada has not waived

7  its sovereign immunity to be sued in federal court for a state law tort claim brought against the

8  state or an arm of the state. The Court accordingly dismisses the false imprisonment claim against

9  NHP.

10      The NHP's motion to dismiss is granted in its entirety.

11

12  **IV.    MOTIONS FOR SUMMARY JUDGMENT BY LVMPD (ECF NOS. 36, 57)**

13          a.   Legal Standard

14      Summary judgment is appropriate "if the movant shows there is no genuine issue as to any

15  material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The

16  substantive law governing a matter determines which facts are material to a case. Anderson v.

17  Liberty Lobby, 477 U.S. 242, 248 (1986).

18      When considering the propriety of summary judgment, the court views all facts and draws

19

20  id. at 71 n.10 ("Of course a state official in his or her official capacity, when sued for injunctive
   relief, would be a person under § 1983 actions because official-capacity actions for prospective

21  relief are not treated as actions against the State.").

22  To the extent Plaintiff seeks injunctive relief, it is for "injunctive relief against further

23  Constitutional violations." ECF No. 35 at 16. This constitutes a claim to only abstract and
   speculative injury—that at some future date, officers of the NHP might arrest her and subject her

24  to constitutional violations. The Supreme Court has determined that such allegations of injury are
   not real and immediate, but speculative and insufficient to confer standing. See Los Angeles v.

25  City of Lyons, 461 U.S. 95, 108 (1983) ("[I]t is no more than conjecture to suggest that in every
   instance of a traffic stop, arrest, or other encounter between the police and a citizen, the police will

26  act unconstitutionally and inflict injury without provocation or legal excuse. And it is surely no

27  more than speculation to assert either that [plaintiff] himself will again be involved in one of those
   unfortunate instances . . . .").

28

1   all inferences in the light most favorable to the nonmoving party. <u>Gonzalez v. City of Anaheim</u>,

2   747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the nonmoving party "must

3   do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where

4   the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party,

5   there is no genuine issue for trial." <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007) (alteration in original)

6   (internal quotation marks omitted). The nonmoving party may not merely rest on the allegations

7   of her pleadings; rather, she must produce specific facts—by affidavit or other evidence—showing

8   a genuine issue of fact. <u>Anderson</u>, 477 U.S. at 256.

9      "If a party fails to properly support an assertion of fact or fails to properly address another

10  party's assertion of fact the court may: (1) give an opportunity to properly support or address the

11  fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if

12  the motion and supporting materials — including the facts considered undisputed — show that the

13  movant is entitled to it; or (4) issue any other appropriate order." <u>Heinemann v. Satterberg</u>, 731

14  F.3d 914, 915 (9th Cir. 2013) (citing Fed. R. Civ. P. 56(e)).

15          b.   <u>Factual Background</u>

16              i.   *Undisputed Facts*

17      The Court finds the following facts to be undisputed based on the record:

18      On or around 2:00 a.m. on October 23, 2019, Defendant McCall noticed Brennan walking

19  along Boulder Highway near Missouri Avenue. He approached her and accused her of walking

20  along the highway in violation of Nevada law. Brennan responded that she was walking in a

21  "breakdown lane," which she did not think was unlawful. McCall asked for her identification, and

22  Brennan provided a driver's license. Brennan began to express that she was upset with the manner

23  in which Defendant McCall was speaking to her. McCall then attempted to handcuff Brennan, at

24  which point Brennan told him not to handcuff her until he had called another officer to the scene.

25  McCall then called dispatch for officer assistance in taking Brennan into custody. McCall then

26  placed Brennan on the ground with her hands behind her back. Brennan screamed that she had

27  recently had surgery on her wrist/arm, and pleaded that McCall not place the handcuffs on her

28  wrists. Brennan laid on the ground with her chest down and hands behind her back.

1     Some minutes later, several LVMPD officers arrived at the scene. Brennan remained on

2  the ground. She again told the officers not to put handcuffs on her due to her wrist surgery. While

3  Brennan was on the ground, her dentures fell out of her mouth, and she cried for the LVMPD

4  officers to put them back in her mouth. The officers did not give Plaintiff her dentures back but

5  placed them in a bag. Brennan was handcuffed and brought to the hood of the patrol car. Brennan

6  cursed at the officers repeatedly while detained at the hood of the car. The officers then placed

7  Brennan in the backseat of the patrol car. Brennan repeatedly demanded to know what she was

8  being arrested for and cried in pain about her wrist.

9     Brennan was taken to CCDC and McCall called for a Code 5. A Code 5, according to

10  McCall, is called when someone who has been arrested is not compliant. Upon her arrival at

11  CCDC, Brennan was placed in a restraint chair. Brennan repeatedly screamed that the officers had

12  "fucked" with her arm and that she was in pain, while officers strapped her arms, legs, and head

13  to the restraint chair. A spit mask/hood was placed over Brennan's head.

14     Officers wheeled Brennan to a cell where she remained from around 2:53 a.m. to 4:31 a.m.

15  Brennan was subsequently released and no criminal charges were ever brought against her.

16                              *ii.   Disputed Facts*

17     The Court finds that the following facts regarding Plaintiff's initial arrest to be in dispute:

18  whether Brennan was intoxicated at the time McCall and the LVMPD officers approached and

19  arrested her; whether she resisted arrest at any point; whether she was handcuffed on her wrists

20  despite telling officers she had recently had wrist/arm surgery; and whether any officer had his or

21  her knee on Brennan's back while she was restrained.

22     The parties further dispute the following regarding Plaintiff's time at CCDC: whether a

23  restraint chair was necessary to control her; whether LVMPD officers knew Plaintiff had a torn

24  MCL and arm/wrist surgery and purposefully strapped her legs/arms in; whether Plaintiff spit at

25  LVMPD officers, requiring use of a spit mask; and whether Plaintiff was denied assistance after

26  she vomited in her holding cell.

27  ///

28  ///

c.  Discussion

LVMPD argues summary judgment should be granted in its favor as to all claims against it. The Court addresses each claim in turn.

First, LVMPD argues Plaintiff's Monell claim is facially deficient because it is not supported by any plausible factual allegations. LVMPD further argues there is no evidence in the record to establish a Monell claim, and that Plaintiff asserts no non-conclusory factual content which would allow her to survive a motion for summary judgment. Plaintiff argues there are genuine issues of material fact that warrant the Monell claim surviving summary judgment. Plaintiff argues "the LVMPD's policies and procedures are available online," and that Plaintiff's claims were properly pled.

As previously stated, for a municipal entity may be liable on a Monell claim, there must be a showing that the municipality's "policy or custom . . . inflict[ed] the injury," and that "the policy is the moving force behind the constitutional violation." Monell, 436 U.S. at 694. A plaintiff may establish municipal liability by demonstrating that "(1) the constitutional tort was the result of a longstanding practice or custom which constitutes the standard operating procedure of the local government entity; (2) the tortfeasor was an official whose acts fairly represent official policy such that the challenged action constituted official policy; or (3) an official with final policy-making authority delegated that authority to, or ratified the decision of, a subordinate." Price v. Sery, 513 F.3d 962, 966 (2008) (internal quotation marks and citations omitted). The Supreme Court has cautioned that federal courts must apply "rigorous standards of culpability and causation" in order to "ensure that the municipality is not held liable solely for the actions of its employees," as municipal liability under Monell should not "collapse[] into *respondeat superior* liability." Bd. of the Cty. Comm'rs v. Brown, 520 U.S. 397, 404 (1997).

The Court finds that Plaintiff's Monell claim against LVMPD cannot survive summary judgment. Plaintiff has identified no evidence of any policy, practice, or custom giving rise to her alleged injuries. Plaintiff states that LVMPD's "policies and procedures are available online," but does not identify which policies or procedures led to her alleged harm. Nor does she allege that an official whose acts represent the "official policy" of the LVMPD was responsible for her injuries,

11

or that the actions resulting in her injury were ratified by an official with final policy-making authority. Plaintiff rests largely on the allegations in her complaint. See ECF No. 46 at 10 ("In any event, Plaintiff's claim was properly plead."). But on summary judgment, a party must provide factual support for her allegations. FRCP 56(c); Anderson, 477 U.S. at 256. Moreover, Defendant has come forth with evidence that Plaintiff cannot identify a policy that led to the violation of her constitutional rights. When asked at her deposition what policies, customs, or procedures at LVMPD she attributed to her alleged constitutional violations, Plaintiff responded: "I don't know of any direct policies. I just know that I have seen other people who have been arrested for worse things and that have been treated nicer." ECF No. 36-2 at 24:15-20. When asked whether she knew if any supervisors or higher-ranking officers approved of anything that the LVMPD officers did, Plaintiff responded: "I don't know that." Id. at 90:16-19. The Court finds that LVMPD has carried its burden on a motion for summary judgment and that Plaintiff has failed to show through specific evidence that there is a genuine issue of material fact as to municipal liability.

The Court further finds that Plaintiff's first and second causes of action against LVMPD are duplicative. The first cause of action alleges a 42 U.S.C. § 1983 claim for Fourth, Fifth, and Fourteenth Amendment violations and seeks monetary damages, while the second cause of action pleads a Monell claim. As stated in the preceding analysis, a municipal entity like LVMPD can only be liable for money damages on a section 1983 action through a Monell claim. Because the two claims are duplicative, the Court grants summary judgment as to both claims.

The Court next addresses Plaintiff's state law claims for false imprisonment and battery against LVMPD. The Court construes Plaintiff's claims for false imprisonment and battery against LVMPD as being brought under the theory of *respondeat superior*. Under Nevada law, an employer may be liable for an employee's negligence or intentional torts under a theory of *respondeat superior*. See Busch v. Flangas, 837 P.2d 438, 440 (Nev. 1992) (negligence); Rockwell v. Sun Harbor Budget Suites, 925 P.2d 1175, 1180 (Nev. 1996) (intentional tort). *Respondeat superior* liability attaches "only when the employee is under the control of the employer and when the act is within the scope of employment." Molino v. Asher, 618 P.2d 878, 879 (1980). "An actionable claim on a theory of *respondeat superior* requires proof that (1) the actor at issue was

an employee, and (2) the action complained of occurred within the scope of the actor's employment." Rockwell, 925 P.2d at 1179.

Defendant argues it is not liable on Plaintiff's state law tort claims because Plaintiff cannot show that any LVMPD officer falsely imprisoned or battered Plaintiff. It is undisputed that the actions allegedly taken by the LVMPD officers occurred within the course and scope of their employment.

With respect to her false imprisonment claim, Defendant argues the LVMPD officers had probable cause to arrest her, because she had violated NRS § 484B.297, which makes it a misdemeanor for any pedestrian "to walk along and upon an adjacent highway" where "sidewalks are provided" and "for any pedestrian who is under the influence of intoxicating liquors or any narcotic or stupefying drug to be within the traveled portion of any highway." NRS § 484B.297(1) and (4). Defendant argues that by the time LVMPD officers arrived at the scene, Brennan had admitted to walking on the shoulder of Boulder Highway, where sidewalks are available, and to having had two beers and a shot that evening. Further, Defendant argues Plaintiff was not cooperative and resisted arrest. Under NRS § 199.280, "a person who . . . willfully resists, delays, or obstructs a public officer in discharging or attempting to discharge any legal duty" is guilty of a misdemeanor. LVMPD argues that Defendant McCall's body camera footage clearly shows that Plaintiff was resisting arrest throughout her interactions with McCall and the LVMPD officers, and notes that Plaintiff admitted in depositions to resisting arrest. See ECF No. 57-5 at 79:21-80:9. Defendant further argues that no false imprisonment occurred after Plaintiff was transported to CCDC, because the LVMPD correctional officers working at CCDC had no independent duty to investigate the sufficiency of the underlying arrest and whether probable cause existed at the time. Finally, Defendant argues the LVMPD officers are entitled to discretionary act immunity on Plaintiff's false imprisonment claim.

Plaintiff argues there are genuine issues of material fact with respect to whether any officer had probable cause to arrest her. Plaintiff concedes that she was walking on the shoulder of the highway and cut across the highway to return to her home, but argues there is no evidence she was actually intoxicated while walking down Boulder Highway. While she admits to having told

1    McCall she had two beers and a shot before their encounter, she did not indicate when she had

2    these drinks, and no officer conducted any sobriety test on her. Plaintiff further argues there are

3    genuine disputes of fact as to whether she was resisting arrest, and she contends that the body

4    camera footage does not clearly show her bucking or fighting against any officer. She argues that

5    to the extent she was moving her body, it was in an evasive effort to protect herself "from further

6    injury and the unrelenting pain she was experiencing as a result of LVMPD officers' restraints."

7    ECF No. 61 at 5.

8         The Court finds that there is no genuine issue of material fact that probable cause existed

9    to arrest Plaintiff for a violation of NRS § 484B.297(1). Probable cause exists when "police have

10   reasonably trustworthy information of facts and circumstances that are sufficient in themselves to

11   warrant a person of reasonable caution to believe that [a crime] has been . . . committed by the

12   person to be arrested." State v. McKellips, 49 P.3d 665, 660 (Nev. 2002). NRS § 484B.297(1)

13   states that "[w]here sidewalks are provided, it is unlawful for any pedestrian to walk along and

14   upon an adjacent highway." Plaintiff admits that she was walking on the shoulder of Boulder

15   Highway at the time Defendant McCall approached her. See ECF No. 61 at 4, 5, 10 ("Ms. Brennan

16   was clearly walking on the shoulder of the road."). Defendant McCall's body camera footage also

17   unambiguously shows that Plaintiff was walking on the shoulder when McCall approached her,

18   and that there were sidewalks available on either side of the highway. As such, Plaintiff was in

19   violation of NRS § 484B.297(1) and probable cause existed to arrest her.[2] The Court acknowledges

20   that Plaintiff avers that Defendant McCall and LVMPD officers intentionally escalated the

21   encounter for the purposes of effectuating an arrest, but it is well-settled that the subjective intent

22   of law enforcement officers is irrelevant where the circumstances surrounding the stop objectively

23

24   [2] The Court does not, however, credit Defendants' arguments regarding Plaintiff's alleged
     intoxication for the purposes of an arrest under § 484B.297(1). The body camera footage reveals
25   that Plaintiff stated to McCall that she had two beers and a shot sometime that evening, but she
     does not indicate at what point she had those drinks. McCall did not inquire as to how recently she
26   had consumed alcohol, and there is no evidence in the record that Plaintiff was ever subjected to a
     sobriety test. By all appearances, Plaintiff seemed lucid and coherent in her conversation with
27   Defendant McCall. A reasonable jury could conclude she was not in violation of NRS
     § 484B.297(1) at the time of her arrest.
28

satisfy either probable cause or reasonable suspicion. United States v. Orozco, 858 F.3d 1204, 1210 (9th Cir. 2017). Because probable cause existed at the time of her arrest, Plaintiff cannot establish that she was "restrained of [her] liberty . . . without any legal cause or justification," and thus the Court grants summary judgment on her claim for false imprisonment against the LVMPD officers. Garton, 720 P.2d at 1228.

The Court turns next to Plaintiff's claim of battery. Defendant argues that LVMPD officers did not batter Plaintiff on Boulder Highway or at CCDC. Defendant argues that Nevada law permits an officer to use the amount of force reasonably necessary to arrest a suspect, and that the force used against Brennan at all points of her detention was reasonable. Defendant argues that when LVMPD officers arrived on the scene, Plaintiff was already on the ground, and that the LVMPD officers merely placed her in handcuffs. Defendant notes that LVMPD's expert testified that based on his education, training, and experience as a handcuffing instructor-trainer, the officers took "extreme car . . . to make sure one handcuff was placed above [Plaintiff's] wrapped wrist and that two sets of handcuffs were applied to minimize the handcuffs pulling against her wrists." ECF No. 57-10 at 7. Defendant further argues that there is no evidence Plaintiff was battered when she was placed in the restraint chair at CCDC. Defendant argues Plaintiff resisted LVMPD correctional officers by refusing to stand, kicking at the officers, spitting at them, and generally resisting their efforts to transport her. Defendant argues the "need to detain Brennan is obvious from the video" from CCDC, and also notes that LVMPD's retained expert opined that Plaintiff's "non-compliant, erratic, and resistive behaviors were an ongoing threat to the security and discipline within the CCDC." ECF No. 57 at 18.

Plaintiff argues that genuine issues of material fact exist with respect to whether she was battered by LVMPD officers while detained on Boulder Highway and at CCDC. Plaintiff contends that genuine issues exist as to whether she acted "in fear and self-defense, attempting to protect her already injured and wounded body," and argues she never attacked or was violent towards any officer. ECF No. 61 at 6.

Under Nevada law, a police officer is privileged to use the amount of force reasonably necessary, and an officer who uses more force than reasonably necessary is liable for battery. Yada

15

v. Simpson, 913 P.2d 1261, 1262 (Nev. 1996). This district has long recognized that the standard for battery by a police officer under Nevada law is the same as under a 42 U.S.C. § 1983 claim. See, e.g., Ramirez v. City of Reno, 925 F. Supp. 681, 691 (D. Nev. 1996) ("The standard for common-law assault and battery by a police officer thus mirrors the federal civil rights law standard: Liability attaches at the point at which the level of force used by a peace officer exceeds that which is objectively reasonable under the circumstances."); Plank v. Las Vegas Metro. Police Dep't, No. 2:12-cv-2205-JCM-PAL, 2016 U.S. Dist. LEXIS 32438, at *26 (D. Nev. Mar. 14, 2016) ("[T]he standard for battery by a police officer under Nevada law is the same as under a 42 U.S.C. § 1983 claim.").

The Court finds that Plaintiff's battery claim presents triable issues of material fact. Viewing the disputed facts, including the body camera footage and the CCDC video footage in the light most favorable to Plaintiff, there are genuine issues of fact as to whether LVMPD officers used more force than reasonably necessary to effectuate her arrest and detention. The Ninth Circuit has emphasized that whether an officer's use of force is "objectively reasonable" is an "inherently fact specific" inquiry, and "should only be taken from the jury in rare cases." Green v. City & Cnty. of San Francisco, 751 F.3d 1039, 1049 (9th Cir. 2014) (quotations omitted). See also Liston v. Cnty. of Riverside, 120 F.3d 965, 976 n.10 (9th Cir. 1997) (finding that determinations regarding excessive force is "ordinarily a question of fact for the jury"); Chew v. Gates, 27 F.3d 1432, 1443 (9th Cir. 1994) ("[W]hether a particular use of force was reasonable is rarely determinable as a matter of law.").

The Court finds there is sufficient evidence in the record from which a jury could conclude that the LVMPD officers used more force than reasonably necessary to arrest Plaintiff on Boulder Highway. Defendant McCall's body camera footage reveals that Plaintiff repeatedly told the LVMPD officers that she had recent surgery on her wrist and pleaded with them not to put handcuffs on her wrist. The video shows officers restraining her by her arms and potentially using the weight of their bodies to keep her on the ground. It is unclear from the video footage whether Plaintiff was handcuffed at her wrists or elsewhere; Plaintiff maintains that she was handcuffed in a painful manner without regard for her wrist surgery, and that to the extent she moved around

during the arrest, it was solely to avoid further injury to her wrist. There are thus genuine disputes as to whether the LVMPD officers knew she was injured, but nevertheless used more force than was necessary to arrest her.

The Court also finds there is sufficient evidence in the record from which a jury could conclude that the LVMPD officers used more force than reasonably necessary at CCDC to restrain Plaintiff. Defendant maintains that the restraint chair had to be used against Plaintiff because she posed a risk of violence to the officers, as she was kicking and spitting at them. The video footage from CCDC reveals that several officers were restraining Plaintiff at different points in time, and throughout, she screamed that her wrist was injured and that she had a torn MCL. The footage further reveals that the officers strapped Plaintiff's legs and arms down, despite her screaming that she was in pain from her injuries. While Defendant argues Plaintiff had her legs restrained due to her efforts to kick the officers, Plaintiff argues she only kicked out her leg because she wanted to avoid further injury. The video also shows that the LVMPD officers put the spit mask/hood on Plaintiff while Plaintiff was screaming out (she alleges, from pain). There are thus genuine disputes as to the officers' motivations for restraining Plaintiff, whether Plaintiff was violent or resistant, and whether the officers used unnecessary force against Plaintiff despite their knowledge of her alleged injuries. The Court accordingly denies summary judgment with respect to Plaintiff's claim for battery.

For the reasons stated above, the Motion for Partial Summary Judgment (ECF No. 36) is granted, and Plaintiff's <u>Monell</u> claim against LVMPD is dismissed. The Motion for Partial Summary Judgment on Plaintiff's Remaining Claims (ECF No. 57) is granted in part and denied in part. Plaintiff's claim for false imprisonment against LVMPD is dismissed, but her claim for battery against LVMPD survives summary judgment.

### V.   CONCLUSION

**IT IS THEREFORE ORDERED** that the Motion to Dismiss (ECF No. 55) by Defendant McCall is GRANTED. Defendant McCall is dismissed from the case.

1      **IT IS FURTHER ORDERED** that the Motion to Dismiss (ECF No. 63) by Defendant

2  NHP is GRANTED. Defendant Nevada Highway Patrol is dismissed from the case.

3      **IT IS FURTHER ORDERED** that the Motion for Partial Summary Judgment (ECF No.

4  36) by LVMPD is GRANTED. Plaintiff's <u>Monell</u> claim against LVMPD is dismissed.

5      **IT IS FURTHER ORDERED** that the Motion for Partial Summary Judgment (ECF No.

6  57) is GRANTED in part and DENIED in part. The motion is GRANTED as to Plaintiff's claim

7  for false imprisonment against LVMPD and DENIED as to Plaintiff's claim for battery against

8  LVMPD.

9      **IT IS FURTHER ORDERED** that the remaining parties shall submit a joint pretrial order

10  to the Court by April 29, 2022 with proposed trial dates starting in October 2022.

11

12      **DATE:** <u>March 31, 2022.</u>

13

                                                    _____
14                                                  **RICHARD F. BOULWARE, II**
                                                    **UNITED STATES DISTRICT JUDGE**
15

16

17

18

19

20

21

22

23

24

25

26

27

28